## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

ALPHA BALL SCREW, LLC, :
 :
  Plaintiff, : CASE NO.
 :
v. :
 :
ACCUTHREAD, LLC, AERMOTIVE, :
LLC, EJM BALL SCREW, LLC, :
MITCHELL MACHELSKI, :
MICHAEL MACHELSKI, :
MATTHEW MACHELSKI, DAVID H. :
HANSEN, and AUSTIN HANSEN, :
 :
  Defendants. : AUGUST 5, 2024

## COMPLAINT

Plaintiff Alpha Ball Screw, LLC ("Alpha"), by and through its attorneys McCarter & English, LLP and McDonald Hopkins LLC, alleges for its Complaint against Defendants Accuthread, LLC, Aermotive, LLC, EJM Ball Screw, LLC, Mitchell Machelski, Michael Machelski, Matthew Machelski, David H. Hansen, and Austin Hansen (collectively, "Defendants") as follows:

## INTRODUCTION AND NATURE OF THE ACTION

Defendants engaged in deceptive practices and a brazen fraudulent scheme to unlawfully interfere with Alpha's business operations by conspiring to steal Alpha's manufacturing equipment, inventory, employees, customers, parts, and

intellectual property to unfairly start their own competing business while simultaneously sabotaging Alpha's business.  Defendants' unlawful scheme caused substantial harm to Alpha and Alpha's customers, many of whom require Alpha's products as critical component parts in the manufacture of United States military aircraft, including the United States Air Force's F-16 and F-35 Fighter Jet Programs.  Defendants' conduct has brought Alpha's operations to a near standstill, which has caused a delay or halt of several United States defense contractors' mission critical projects.

Accordingly, Alpha has commenced this lawsuit to enjoin Defendants' illegal conduct, protect its legitimate business interests, and to recover the significant losses caused by Defendants' egregious conduct.  In doing so, Alpha has brought claims pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), The Lanham Act, 15 U.S.C. § 1125, The Defend Trade Secret Act, 18 U.S.C. § 1836, as well as claims for Conversion, Unfair Trade Practices, Tortious Interference, and Conspiracy.

## **PARTIES**

1.     Plaintiff Alpha is a Michigan limited liability company, located at 8723 W. Freeland Road, Freeland, Michigan 48623.

2

2.      Defendant Accuthread, LLC ("Accuthread") is a Wyoming limited liability company, with a place of business located at 2828 Diesel Park Drive, Saginaw, Michigan 48601.

3.      Defendant Aermotive, LLC ("Aermotive") is an Arizona limited liability company, located at 7645 East Ray Road, Mesa, Arizona 85212.

4.      Defendant EJM Ball Screw, LLC ("EJM") is a Michigan limited liability company, located at 1236 Milliken Court, Traverse City, Michigan 48686.

5.      Defendant Mitchell Machelski ("Defendant Mitchell") is an individual and a citizen of the State of Michigan, former employee of Alpha, and current employee of Accuthread.  Upon information and belief, Defendant Mitchell was an owner of EJM.

6.      Defendant Michael Machelski ("Defendant Michael") is an individual and a citizen of the State of Michigan, former employee of Alpha, and current employee of Accuthread.

7.      Defendant Matthew Machelski ("Defendant Matthew") is an individual and a citizen of the State of Michigan, former employee of Alpha, and current employee of Accuthread.

8.      Defendant David H. Hansen ("Defendant David") is an individual and a citizen of the State of Arizona, co-owner of Aermotive, and, upon information and belief, is a co-owner of Accuthread.  Defendant David is a convicted felon and

3

was sentenced to a prison term of 60 months in federal prison for wire fraud in violation of 18 U.S.C. § 1343, followed by three years of supervised release and was ordered to pay $2,215,764.31 in restitution.  Defendant David was released from prison last year, in 2023, according to the Federal Bureau of Prisons.

9.      Defendant Austin Hansen ("Defendant Austin") is an individual and a citizen of the State of Arizona, co-owner of Aermotive, and, upon information and belief, is co-owner of Accuthread.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that the action alleges causes of action arising under the laws of the United States. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as the claims against Defendants are so related that they form part of the same case or controversy under Article III of the United States Constitution.

11.      This Court has personal jurisdiction over Defendants because (1) Defendants EJM, Mitchell, Michael, and Matthew are citizens of the State of Michigan, (2) Defendants transact business in the State of Michigan, (3) this case arises out of Defendants' tortious conduct in the State of Michigan and/or tortious conduct purposefully directed at the State of Michigan causing injury within the

4

State, and (4) Defendants have derived revenue from goods and/or services rendered in the State and from interstate commerce.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this District.

## BACKGROUND AND FACTS COMMON TO ALL COUNTS

13.     Alpha designs, manufactures, and sells imperial or metric precision ground ball screws, as well as offers specialized repair and remanufacturing services.  Alpha does so by using highly sophisticated equipment that is specially designed for the production of Alpha's product.

14.     The designs and blueprints of the ball screws are of critical importance to Alpha's business operations, as Alpha's customers rely on Alpha's ability to manufacture ball screws to the precise specifications contained in the designs and blueprints, and accordingly design their products around Alpha's ball screws.

15.     The designs and blueprints of the ball screws are maintained on Alpha's computer system.  Alpha protects its computer system and the data contained therein by, *inter alia*, limiting access to the information contained on the computer and requiring passwords to access such information.

5

16.    Alpha's ball screw products are sold in several markets, including defense, aerospace, automotive, automation, machine tool, material handling, metals, and energy.  Alpha's customers in each of these industries rely on Alpha's experience and expertise in ball screw engineering and manufacturing to fit their unique needs.

17.    Alpha's ball screw products are key components to the products in which they are used, causing Alpha's customers to require Alpha to adhere to strict production timelines.  Any interruption in service or other event that causes Alpha to miss a production deadline not only harms the relationship between Alpha and its customer, but also causes Alpha as well as its customer, to lose revenue.

18.    A significant portion of Alpha's customers consist of government defense contractors who utilize Alpha's ball screws in the manufacture of equipment, including F16 fighter jets.  As such, Alpha's ability to manufacture its ball screw products ultimately impacts matters of national security and defense.

<u>**Alpha Purchases the Assets of EJM**</u>

19.    EJM was a company in the business of manufacturing ball screws that became insolvent and ceased business operations on or about April 30, 2019.  Defendants Michael, Mitchell, and Matthew (the "Machelski Defendants") worked for EJM.  At the time, EJM was indebted to various creditors and its manufacturing

6

equipment was subject to federal tax liens imposed by the Internal Revenue Service.

20.     From April 30, 2019 and thereafter, EJM affirmatively represented to government authorities, including the Internal Revenue Service and Michigan Department of Treasury, that EJM had ceased business operations.

21.     Alpha and EJM executed a Purchase and Sale Agreement, dated as of April 30, 2019 (the "PSA"), pursuant to which Alpha agreed to purchase specific assets (the "Equipment") and unfulfilled purchase orders from EJM.  Both Alpha and EJM were represented by counsel during the negotiations of the PSA, and EJM's counsel drafted the initial agreement.

22.     The PSA required that Alpha pay EJM an initial deposit of $12,000.00 by check made payable to Jody Machelski.

23.     Alpha paid this initial deposit by check number 973624 dated March 22, 2019, made payable to Jody Machelski as required by the PSA.  The check was paid by Oxford General Industries, LLC, an entity owned by Alpha's President, Joseph Richello ("Mr. Richello").

24.     On or about March 25, 2019, Jody Machelski endorsed and cashed the initial deposit check.

25.     In addition to payment of the initial deposit, the PSA required Alpha to pay an additional $35,996.41 over a one-year period for the Equipment and purchase orders.

26.     Alpha made the remaining payments required by the PSA by, *inter alia*, paying Lothamer Tax Resolution for tax consulting and accounting services on behalf of EJM and the Machelski Defendants, at the direction of EJM and the Machelski Defendants.

27.     Alpha also made additional payments to, and on behalf of, EJM and the Machelski Defendants in fulfillment of Alpha's obligations under the PSA.  In total, the payments made by Alpha actually exceeded the stated purchase price for the Equipment and purchase orders set forth in the PSA.

28.     Upon entering into the PSA and making the initial deposit, Alpha took possession and ownership of the Equipment and began operations.

29.     Alpha set forth on its website, the following statement: "We have the designs from the now defunct EJM Ball Screw Company that operated out of Bay City, Michigan. If you need a replacement for an EJM design, contact us."

30.     The Machelski Defendants became employed by and began working for Alpha following the sale of the Equipment and purchase orders to Alpha.

31.     As employees of Alpha, the Machelski Defendants were given access to parts of Alpha's computer system.  Although they had authorization to access

8

certain information, their authorization was limited, as there was information contained on Alpha's computer system that the Machelski Defendants did not have authorization to access.

32.    A user name and password are required to access Alpha's computer system.

33.    Alpha further protects certain information, such as designs and blueprints, by maintaining such information on a database entitled OnShape and by further limiting who had access to this information.

34.    Defendant Mitchell was given access to the OnShape database to use in connection with his work at Alpha.

35.    Defendants never asserted that Alpha did not pay the purchase price set forth in the PSA, or any other payments required under the PSA, until five years later in April 2024 when Defendants were conspiring to sabotage Alpha and start their competing business.

### Defendants' Unlawful Scheme – Unlawful Access of Information

36.    Defendants unlawfully conspired in bad faith and executed a scheme to force Alpha out of business while stealing Alpha's equipment, designs, blueprints, products, employees, customers, and other business information for themselves and for their own benefit.

9

37.    In furtherance of their scheme, Defendant Mitchell, acting in concert with Defendant David and on behalf of all Defendants, accessed Alpha's computer system with the intention of accessing information that they were not authorized to access and stole Alpha's confidential and proprietary business information for their own use and benefit and to the detriment of Alpha.  Alpha stores its confidential and proprietary information on secure servers including OnShape, Mathcad, and Google Enterprise.

38.    As part of the scheme, Aermotive and Defendants David and Austin (the "Hansen Defendants"), who are Directors of Aermotive, worked to gain access to Alpha's facilities and proprietary confidential information under the pretext of forming a joint venture or other business arrangement with Alpha.  Aermotive and the Hansen Defendants then proceeded to work in concert with the Machelski Defendants to form Accuthread to unfairly compete with Alpha.  The conspiracy, including the working capital for Accuthread, is being financed by Aermotive and the Hansen Defendants.

39.    On or about May 1, 2024, Accuthread was created as a Wyoming limited liability company by Defendant Austin, who is also Accuthread's Chief Executive Officer.

40.    On or about May 16, 2024, Accuthread registered to do business in the State of Michigan for the stated purpose of manufacturing ball screws.

10

41.     On or about June 1, 2024, Defendant Mitchell, with the assistance of Defendant David, accessed Alpha's OnShape database and created a new OnShape account for Accuthread.  The OnShape account for Accuthread was created by using Defendant Mitchell's Accuthread email address, mitch@accuthread.com.  At the time, Defendant Mitchell was still employed by Alpha.

42.     On or about June 1, 2024, Defendants Mitchell and David began stealing Alpha's designs, blueprints, and other work product belonging to Alpha by electronically transferring ownership of these documents from Alpha to Accuthread.

43.     Between approximately June 1, 2024, through July 27, 2024, Defendants Mitchell and David transferred to Accuthread numerous files containing confidential and proprietary designs, blueprints, or other work product belonging to Alpha.

44.     Defendant Mitchell resigned from Alpha on July 1, 2024, at or around 8:30 a.m.  Within hours of that resignation, by 10:00 a.m. that morning, he unlawfully accessed Alpha's computers and/or servers without authorization and began deleting hundreds of Alpha's files.

45.     Through this conduct, Defendant Mitchell improperly altered the ownership of Alpha's confidential and proprietary designs, blueprints, and other

11

work product, such that the documents appeared to be "owned" by Accuthread in the OnShape database.

46. Defendant David, working in concert with Defendant Mitchell, accessed Alpha's computer system without authorization and unlawfully obtained Alpha's confidential and proprietary designs, blueprints, and other work product and improperly altered the ownership of such documents, such that the documents appeared to be "owned" by Accuthread in the OnShape database.

47. The confidential and proprietary designs, blueprints, and other work product of Alpha that Defendants Mitchell and David stole for Accuthread's and all Defendants' benefit provided economic value to Alpha when they were known only to Alpha.

48. The designs, blueprints, and work product of Alpha that Defendants stole and used for their benefit are Alpha's trade secrets.

49. Alpha maintained the secrecy of its designs, blueprints, and work product, including making such information password protected and storing it on secure databases, including OnShape, Mathcad, and Google Enterprise.

## Defendants' Unlawful Scheme – Stealing Customers and Employees

50. Defendants devised a scheme in an attempt to force Alpha out of business. In furtherance of that scheme, Defendants attempted to obtain monies or property by means of false and fraudulent pretenses.

12

51.     Defendants contacted Alpha's customers and made misrepresentations about Alpha's services and commercial activities.  Specifically, Defendant Mitchell, while still employed at Alpha and thereafter, falsely stated to Alpha's customers that Alpha was going out of business in Michigan and would not be able to fulfill the customers' orders that they placed with Alpha, and that the customers should instead obtain their products from EJM and Accuthread.  Defendant Mitchell also purposefully delayed production and shipping of Alphas' products in furtherance of the scheme.

52.     Defendants transmitted these false statements to Alpha's customers through interstate commerce by means of interstate wires, including email and telephone.

53.     While still employed by Alpha, Defendant Mitchell, on behalf of all Defendants, also intentionally failed to respond to customers and he intentionally interrupted and shut down Alpha's telephone and internet service, all in an effort to create the false appearance that Alpha was going out of business in furtherance of Defendants' scheme.

54.     These misrepresentations to Alpha's customers regarding Alpha's goods and services were material in that they were likely to, and indeed were intended to, influence customers' decisions whether to use Alpha or Accuthread and/or EJM to obtain ball screw products.

13

55.     Defendants knew that the misrepresentations to Alpha's customers were false, and made the false statements to Alpha's customers with the intention of stealing customers from, and to harm, Alpha, and benefit themselves.

56.     As a result of the misrepresentations that Defendants made to Alpha's customers, several of the customers opted to do business with Defendants instead of Alpha.

57.     Defendants also made false representations to Alpha's others employees with the intention of convincing the employees to leave employment with Alpha and, instead, to work for Accuthread and/or EJM.

58.     Specifically, Defendants misrepresented to Alpha's employees that Alpha was going out of business, that the employees would soon lose their jobs, and that such employees should leave Alpha and work for Defendants.

59.     Defendants knew that the misrepresentations to Alpha's employees were false, and made the false statements to Alpha's employees in order to steal the employees from, and to harm, Alpha, and benefit themselves.

60.     As a result of the misrepresentations that Defendants made to Alpha's employees, several of Alpha's employees left their jobs with Alpha to go work for Defendants.

14

## **Defendants' Unlawful Scheme – Stealing Inventory and Equipment**

61.     In addition to taking Alpha's proprietary and trade secret information, customers, and employees, Defendants also stole inventory and equipment belonging to Alpha as well as inventory and property belonging to Alpha's customers.

62.     Specifically, Defendants stole the Equipment subject of the PSA that Alpha purchased from EJM in April 2019 after EJM became insolvent and ceased business operations, and moved it to a nearby facility for use by Accuthread and/or EJM.

63.     For certain equipment that was too large to physically remove, Defendants stole component parts to sabotage the Equipment and render it useless, with the intention of preventing Alpha from fulfilling customer orders and further frustrating its business operations.

64.     Defendants also stole hand-held inspection equipment required to check parts and assemblies during the manufacturing process.  The theft of the inspection equipment left Alpha without the ability to measure and inspect its manufactured parts which, as Defendants were well aware, prevents Alpha from shipping its products.

15

65.     Defendants also stole several pieces of Alpha's inventory, including but not limited to, boxes of ball bearings that are critical to Alpha's manufacturing process.

66.     As a result of Defendants' unlawful theft of the Equipment and inventory, Alpha has been unable to fulfill the purchase orders for its remaining customers.  In fact, production at Alpha is at a near standstill as a direct result of Defendants' theft of Alpha's Equipment and inventory.

### Defendants' Unlawful Scheme – Filing Frivolous State Court Action

67.     In furtherance of Defendants' scheme, and following Defendants' theft of Alpha's trade secrets, customers, employees, inventory, and Equipment, EJM filed a frivolous lawsuit against Alpha and Alpha's owner, Mr. Richello, in Michigan's Bay County Circuit Court captioned *EJM Ballscrew, LLC v. Alpha Ballscrew, LLC and Joseph Richello*, Case No. 24-3459-CB (Cir. Ct. Bay Cty.) (the "State Court Action"), in an improper effort to divert from and justify their misconduct.

68.     Defendants also filed a fraudulent UCC-1 on July 2, 2024, more than five years after the sale of the equipment under the PSA.

69.     In the State Court Action, EJM falsely verified and alleged that Alpha did not pay for the Equipment and purchase orders as required by the PSA.  EJM also filed a Verified Motion for Possession Pending Final Judgment (the "Motion

for Possession") seeking an order that Alpha and Mr. Richello refrain from substantially impairing the value of the Equipment, and requiring a Sheriff or court officer to seize the Equipment and deliver it to EJM or its designated agent.

70. The Motion for Possession remains pending in the State Court Action and no hearing has been conducted as of the date hereof. As a result of their theft, however, Defendants are already in wrongful possession of the Equipment and began altering its appearance and using the Equipment for their own benefit.

71. Alpha has made efforts to take back the Equipment that rightfully belongs to Alpha. Specifically, Alpha sought the assistance of law enforcement to investigate the theft of its Equipment and inventory.

72. On July 24, 2024, the Michigan State Police obtained a search warrant to reclaim the equipment and inventory that Defendants stole from Alpha. When the State Police arrived at Defendants' warehouse to take possession of the stolen Equipment, Defendants interfered with the State Police investigation and misrepresented to law enforcement that the Equipment was solely the subject of a civil proceeding, and that the State Police could not take possession. Indeed, service of process of the State Court Action on Mr. Richello was only effected that same day.

73. Defendants made such representations to law enforcement despite knowing that they had no legal basis for possession of the Equipment, the Motion

17

for Possession remains pending, the State Court Action is pending, and there is no order permitting Defendants to take possession of the Equipment.

74.     As a result of Defendants' interference with the State Police investigation, Alpha could not re-take possession of the Equipment and remains unable to fulfill purchase orders for its remaining customers.

75.     Defendants' theft of the Equipment has caused Alpha's operations to be at a near standstill, has interrupted Alpha's ability to provide service to its customers, and threatens Alpha's irreparable harm.

## FIRST COUNT – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. § 1030(g))
### (Against Defendants Mitchell and David)

76.     Alpha incorporates the allegations contained in Paragraph 1–75, above, as if fully set forth herein.

77.     Alpha's computer system is used in, and affects, interstate commerce or communication, as such computers are used to transact business throughout the country.

78.     Alpha provided Defendant Mitchell authorization to access the computer system for the limited purpose of creating and reviewing designs and blueprints for Alpha in order to manufacture ball screw products for Alpha's customers while Defendant Mitchell was employed for Alpha.

18

79.    Alpha never gave Defendant David authorization to access its computer system.

80.    Defendants Mitchell and David intentionally accessed Alpha's computer system for the purpose of stealing Alpha's designs, blueprints, and other work product, and then using that information to benefit Defendants and harm Alpha.

81.    Defendant Mitchell's access was unauthorized and/or exceeded his authorized access, and Defendant David's access was unauthorized.

82.    Defendants Mitchell and David intentionally accessed and stole the proprietary designs, blueprints, and work product from Alpha's computer and knowingly electronically transmitted the information to Accuthread so that Defendants could use the improperly obtained information for their benefit.  As a result, Alpha has been unable to access the information, preventing Alpha from completing work orders for its customers and essentially forcing Alpha to a near standstill.

83.    As a direct and proximate result of Defendant Mitchell's and Defendant David's conduct, Alpha incurred losses in connection with the interruption of its computer system, including but not limited to, costs well in excess of the statutory minimum in damage assessment and remedial measures

incurred by Alpha in dealing with and rectifying their conduct, lost revenue, and loss of business opportunities resulting from the interruption of service.

84.     As a direct and proximate result of Defendant Mitchell's and Defendant David's conduct of intentionally accessing Alpha's protected computer systems without authorization, Alpha's computer systems became impaired, causing Alpha damage and loss.

85.     Through the foregoing conduct, Defendant Mitchell and Defendant David are in violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2)(C) and 1030(a)(5)(C).

## SECOND COUNT – VIOLATION OF THE LANHAM ACT § 43(a)
### (15 U.S.C. § 1125)
### (Against All Defendants)

86.     Alpha incorporates the allegations contained in Paragraph 1–85, above, as if fully set forth herein.

87.     Defendants, including specifically Defendant Mitchell, communicated via telephone and email to numerous customers of Alpha, which represented a significant portion of the market for Alpha's ball screw products.

88.     The communications that Defendants made to Alpha's customers, in which Defendants stated that Alpha was going out of business, were false and misleading representations of fact concerning Alpha's services and commercial activities.

20

89.     Defendants' communications to Alpha's customers constituted a commercial advertisement within the meaning of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

90.     Defendants placed these misrepresentations into interstate commerce by transmitting the communications through interstate wires, including email and telephone.

91.     Defendants' misrepresentations were material in that they were likely to, and indeed intended to, influence Alpha's customers in their decision whether to purchase ball screws from Alpha, EJM, Accuthread, or elsewhere.

92.     As a direct and proximate result of the factual misrepresentations that Defendants made to Alpha's customers, Alpha suffered damages in the form of diversion of sales and/or lost goodwill.

## THIRD COUNT – VIOLATION OF THE DEFEND TRADE SECRETS ACT
### (18 U.S.C. §§ 1836, *et seq.*)
### (Against All Defendants)

93.     Alpha incorporates the allegations contained in Paragraph 1–92, above, as if fully set forth herein.

94.     Defendants Mitchell and David stole confidential and proprietary designs, blueprints, and work product belonging to Alpha for all Defendants' benefit, which constitute trade secrets within the meaning of the Defend Trade Secrets Act for the following reasons:

21

a. Such information is not known outside of Alpha's business and is known within Alpha's business to only a limited number of people;

b. Alpha takes reasonable measures to protect the secrecy of this information, including by making such information password protected and limiting access to such information;

c. This information is highly valuable to Alpha and derives its value from being secret, and Alpha expends considerable effort to generate this information;

d. This information is very difficult – if not impossible – for others to properly acquire or duplicate without Alpha's authorization and is not readily ascertainable; and

e. This information would be, and is, highly valuable to Alpha's competitors.

95.     Defendants used improper means to misappropriate Alpha's trade secret information in that Defendants Mitchell and David improperly accessed Alpha's computers to obtain the information, transmitted and transferred ownership to Accuthread with the intent to harm Alpha, and they had no other legitimate reason for accessing the information and transferring ownership.

96.     On information and belief, Defendants misappropriated Alpha's trade secrets so that they could copy them and use them when conducting business for EJM and Accuthread.

97.     On information and belief, Defendants have used, or will inevitably use, such stolen information to Alpha's detriment.

22

98.     Alpha has suffered irreparable harm as a result of Defendants' misappropriation of trade secrets, and will continue to suffer irreparable harm in the absence of an injunction.

99.     Alpha has no adequate remedy at law without an injunction.

100.    As a direct and proximate result of Defendants' conduct, Alpha is entitled to actual damages in an amount to be determined at trial.  Defendants' acts and conduct were, and continues to be, willful and malicious, justifying an award of exemplary damages and attorneys' fees.

## FOURTH COUNT – CONVERSION
### (Common Law and MCL § 600.2919a)
### (Against All Defendants)

101.    Alpha incorporates the allegations contained in Paragraph 1–100 above, as if fully set forth herein.

102.    Alpha owns the Equipment, having purchased the Equipment pursuant to the PSA.

103.    Alpha owns the inventory referred to above, having purchased the inventory from numerous vendors and suppliers.

104.    Only Alpha holds an ownership interest in the Equipment and inventory.

105.    Defendants unlawfully engaged in a distinct act of dominion over Alpha's Equipment and inventory by, *inter alia*, unlawfully removing the

23

Equipment and inventory from Alpha's premises and bringing it to Defendant Accuthread's premises and refusing to return the Equipment and inventory.

106.   Defendants have converted the Equipment and inventory to their own use by refusing to return the property, using the property to fulfill orders for customers it stole from Alpha, and altering or changing the property.

107.   Alpha has been deprived of the use of the Equipment and inventory since Defendants stole the property from Alpha's warehouse.

108.   Defendants used their unlawful dominion over the Equipment and inventory for their own benefit to, among other things, steal customers from Alpha and begin fulfilling orders for the stolen customers.

109.   Defendants' conduct constitutes common law and statutory conversion, pursuant to MCL § 600.2919a, which entitles Alpha to treble damages and attorneys' fees against Defendants.

### FIFTH COUNT – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (Against All Defendants)

110.   Alpha incorporates the allegations contained in Paragraph 1–109, above, as if fully set forth herein.

111.   Alpha has contracts with its customers for the manufacture, production, and sale of ball screws.

24

112.   Defendants knew of Alpha's business relationships and expectancies with these third parties.

113.   Defendants stole the Equipment and inventory from Alpha, which has caused Alpha to be unable to meet the manufacturing requirements of its customers and, therefore, breach the contracts it has with several of its customers.

114.   Defendants' unjustified conduct, including their unlawful taking of the Equipment and inventory combined with Defendants' misrepresentations to Alpha's customers and employees, have halted Alpha's operations to a near standstill and have caused Alpha to be unable to perform contracts with its customers.

115.   Defendants intended to interfere with Alpha's business relationships and expectancies with third parties as well as its employees.

116.   As a direct and proximate result of Defendants' interference, Alpha has suffered damages, including but not limited to loss of sales and customer accounts, complaints relating to Alpha's inability to meet production deadlines, loss of employees, and damage to Alpha's reputation and goodwill.

117.   Defendants' conduct has, and will continue to, disrupt Alpha's business and cause substantial damage to Alpha.

25

## SIXTH COUNT – BREACH OF DUTY OF LOYALTY
### (Against the Machelski Defendants)

118.  Alpha incorporates the allegations contained in Paragraph 1–117, above, as if fully set forth herein.

119.  As employees of Alpha, the Machelski Defendants owed a duty of loyalty to Alpha as their employer to act solely for Alpha's benefit in all matters connected with their employment.

120.  The Machelski Defendants breached their duty of loyalty to Alpha by taking actions contrary to the interests of Alpha for their own improper purposes and benefit and for the benefit of all Defendants, including by exceeding authorized access to Alpha's computer systems for purposes of taking and using Alpha's confidential, proprietary, and trade secret information, and otherwise sabotaging Alpha's business operations by, *inter alia*, misrepresenting to Alpha's customers and its other employees that Alpha was going out of business, purposefully delaying production and shipment of Alpha's products, interrupting and shutting down Alpha's telephone and internet service, stealing Alpha's Equipment and inventory, stealing Alpha's customers inventory and property, and stealing inspection tools and component parts of Equipment so as to render the Equipment useless.

121.  As a direct and proximate result of the Machelski Defendants' breach of their duty of loyalty, Alpha has been damaged.

26

**SEVENTH COUNT – AIDING AND ABETTING BREACH
OF DUTY OF LOYALTY**
**(Against Accuthread, Aermotive, EJM, and the Hansen Defendants)**

122.   Alpha incorporates the allegations contained in Paragraph 1–121,
above, as if fully set forth herein.

123.   Accuthread, Aermotive, EJM, and the Hansen Defendants had
knowledge of the wrongful conduct taken by the Machelski Defendants in breach
of their duty of loyalty.

124.   Accuthread, Aermotive, EJM, and the Hansen Defendants
substantially assisted and/or encouraged the Machelski Defendants to engage is
such wrongful conduct for their own improper purposes and benefit, knowing that
such actions were contrary to the interests of Alpha.

125.   As a direct and proximate result, Alpha has been damaged.

**EIGHTH COUNT – UNFAIR, UNCONSCIONABLE, OR DECEPTIVE
METHODS,  ACTS, OR PRACTICES**
**(MCL § 445.903)**
**(Against All Defendants)**

126.   Alpha incorporates the allegations contained in Paragraph 1–125,
above, as if fully set forth herein.

127.   Defendants unlawfully misappropriated Alpha's trade secrets, and
made false, misleading, and disparaging statements to Alpha's customers regarding
Alpha's business.

27

128.   Defendants misrepresented to many of Alpha's customers that Alpha was going out of business and that Alpha would not be able to fulfill the purchase orders for its customers.

129.   Defendants further sabotaged Alpha's business operations by stealing its Equipment and/or stealing parts to render the Equipment useless.

130.   Defendants made false statements to induce Alpha's customers to stop doing business with Alpha and, instead, do business with Defendants EJM and Accuthread.

131.   Defendants' disparagement of Alpha's business by false and misleading representation of fact constitutes a violation of MCL § 445.903(f).

132.   As a direct and proximate result of Defendants' deceptive practices, Alpha has suffered damages by way of lost revenue, lost business opportunities, and damage to its goodwill.

## NINTH COUNT – CIVIL CONSPIRACY
### (Against All Defendants)

133.   Alpha incorporates the allegations contained in Paragraph 1–132, above, as if fully set forth herein.

134.   Defendants entered into an agreement to harm Alpha and/or acted in concert in a manner that was detrimental to Alpha.

135.    Specifically, Defendants acted in concert to steal Alpha's trade secrets, customers, employees, inventory, and the Equipment, such that Alpha would be forced out of business.

136.    Defendants Michael, Mitchell, Matthew, David, and Austin, acting individually for their personal benefit and acting on behalf of and for the benefit of Accuthread, Aermotive, and EJM, engaged in tortious conduct in an effort to harm Alpha.

137.    Defendants illegally, maliciously, and wrongfully conspired with one another with the intent to, and for the illegal purpose of, engaging in the impermissible acts described previously in this Complaint.

138.    Defendants' actions, alone and in combination, were tortious and/or unlawful, or in the alternative, were designed to accomplish an unlawful purpose or a lawful purpose through unlawful means.

139.    As a direct and proximate result of the conspiracy and Defendants' illegal, wrongful, and tortious acts, Alpha has suffered significant damages.

### TENTH COUNT – REQUEST FOR DECLARATORY RELIEF
**(Against All Defendants)**

140.    Alpha incorporates the allegations contained in Paragraph 1–139, above, as if fully set forth herein.

ME1 49344299v.1

141.   An actual, existing, bona fide controversy exists between Alpha and Defendants with respect to the ownership of the Equipment and inventory, which can only be determined by an adjudication of a declaratory judgment as provided by law.

142.   Alpha is entitled to a Declaratory Judgment that it is the rightful owner of the Equipment and inventory, and that Defendants have no possessory interest in the Equipment and inventory.

143.   If Alpha's rights are not adjudicated by way of a declaratory action, there will be adverse consequences to Alpha, including but not limited to, the wrongful removal of the Equipment and inventory from Alpha's possession, which would continue to negatively impact Alpha's business.

## **<u>REQUEST FOR RELIEF</u>**

WHEREFORE, Plaintiff Alpha Ball Screw, LLC respectfully requests an order granting the following relief:

1.   An order declaring that Alpha is the rightful owner of the Equipment and inventory, and further requiring that Defendants immediately return the Equipment and inventory to Alpha;

2.   An order enjoining Defendants from using, accessing, or disseminating Alpha's trade secrets, including Alpha's confidential and proprietary designs, blueprints, and other work product;

30

3.      An order directing Defendants to immediately return to Alpha all trade secrets and other information belonging to Alpha that they have in their possession, custody, or control;

4.      An award of damages in amount to be determined;

5.      An award of treble damages pursuant to the Lanham Act and MCL § 600.2919a;

6.      An award of punitive damages;

7.      An award of Alpha's attorneys' fees and costs; and

8.      Such other relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Dated:  August 5, 2024

THE PLAINTIFF,
ALPHA BALL SCREW, LLC


By:____/s/ Thomas J. Finn_____
   Thomas J. Finn
   tfinn@mccarter.com
   Paula Cruz Cedillo
   pcedillo@mccarter.com
   McCARTER & ENGLISH, LLP
   CityPlace I, 36th Floor
   185 Asylum Street
   Hartford, Connecticut 06103
   Tel: 860.275.6700
   Fax: 860.560.5967

Of Counsel:

   - and -

Eduardo C. Robreno
McCARTER & ENGLISH, LLP
1600 Market St., Suite 3900
Philadelphia, PA 19103

Timothy J. Lowe (P68669)
tlowe@mcdonaldhopkins.com
McDONALD HOPKINS LLC
39533 Woodward Ave, Suite 318
Bloomfield Hills, MI 48304
Tel: 248.220.1359
Fax: 248.646.5075

David X. Sullivan
Justyn P. Stokely
McCARTER & ENGLISH, LLP
CityPlace I
Hartford, Connecticut 06103

   - and -

Micah Marcus
McDONALD HOPKINS LLC
300 North LaSalle Street, Suite 1400
Chicago, IL 60654

ME1 49344299v.1