UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALPHA BALL SCREW, LLC,

        Plaintiff,                           Case No. 1:24-cv-12043

v.                                                    Honorable Thomas L. Ludington
                                                        United States District Judge
ACCUTHREAD, LLC, et al,

        Defendants.
_____/

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO EXPEDITE RESOLUTION**

Four days ago, Plaintiff Alpha Ball Screw, LLC, filed a complaint alleging Defendants—five individuals and three corporate entities—conspired and engaged in "a brazen fraudulent scheme to unlawfully" steal Plaintiff's "manufacturing equipment, inventory, employees, customers, parts, and intellectual property" to use in starting their own "competing business while simultaneously sabotaging Alpha's business." It does not appear any Defendants have been served with Plaintiff's Complaint, and no appearances have been filed on behalf of any Defendant. Yet Plaintiff seeks a preliminary injunction against all Defendants. As explained below, Plaintiff's request will be denied without prejudice.

**I.**

Until April 2019, Defendant EJM Ball Screw, LLC, manufactured ball screws in Traverse City, Michigan, and employed Defendants Mitchell Machelski, Michael Machelski, and Matthew Machelski (collectively, "the Machelski Defendants"). *Id.* at PageID.3. But EJM "became insolvent and ceased operations" on April 30, 2019. *Id.* at PageID.6. On the same day EJM ceased operations, it entered into a "Purchase and Sale Agreement" (PSA) with Plaintiff Alpha Ball

Screw, LLC, a Michigan limited liability company located in Freeland, Michigan, which "designs, manufactures, and sells imperial or metric precision ground ball screws."[1] ECF No. 1 at PageID.2, 5. According to the PSA, Plaintiff agreed to purchase certain equipment and "unfulfilled purchase orders from ECJM." *Id.* at PageID.7. Plaintiff alleges it paid EJM $47,996.41, as well as "additional payments . . . in fulfillment of [Plaintiff's] obligations under the PSA." *Id.* at PageID.7–8. Notably, neither the PSA nor proof of payments were attached to Plaintiff's Complaint. *See generally id.*

After Plaintiff acquired the equipment and purchase orders form EJM, it hired the Machelski Defendants. *Id.* at PageID.8. According to Plaintiff, after Defendant Mitchell was hired, Plaintiff gave him "access to" Plaintiff's electronic database, OnShape, which "maintains" Plaintiff's designs and blueprints. *Id.* at PageID.9.

Plaintiff alleges that, in the five years after the Machelski Defendants were hired, they began "conspir[ing] in bad faith" with Defendants David Hansen and Austin Hanson (collectively the "Hansen Defendants"), who are both directors of Defendant Aermotive, an Arizona limited liability company.[2] *Id.* at PageID.9, 3. To that end, Plaintiff alleges the Machelski Defendants and the Hansen Defendants "executed a scheme to force [Plaintiff] out of business while stealing [Plaintiff's] equipment, designs, blueprints, products, employees, customers, and other business information for themselves and for their own benefit." *Id.* at PageID.9.

---

[1] A ball screw is "a mechanical device used to convert rotational motion into linear motion." *What is a Ball Screw?*, DYNATECT, https://dynatect.com/resources/what-is-a-ball-screw/ (last visited Aug. 9, 2024) [https://perma.cc/Y5PD-KQ47]. A ball screw is composed of "a threaded shaft, a nut, and a series of ball bearings," and works "similarly" to a nut and bolt, "but with much less friction." *Id.* Because of this, ball screws are known for their "high accuracy" and "high efficiency." *Id.* They are most commonly used in "industrial and high-tech applications," including machine tools, robotics, aerospace systems, and medical equipment. *Id.*

[2] It is not clear from Plaintiff's Complaint how the individual Defendants came to know each other.

Specifically, Plaintiff alleges the following:

1. Defendant Mitchell and Defendant David used Plaintiff's computer system to access confidential and proprietary information through OnShape and two other "secure servers," Mathcad and Google Enterprise. *Id.* at PageID.10.

2. The Hansen Defendants and Defendant Aermotive "gain[ed] access to [Plaintiff's] facilities and proprietary confidential information under the pretext of forming a joint venture or other business arrangement with [Plaintiff]." *Id.* at PageID.10.

3. On May 1, 2024, Defendant Austin created Accuthread as a Wyoming limited liability company. *Id.* at PageID.10. Sixteen days later, Accuthread registered to do business in the state of Michigan, noting its purpose was "manufacturing ball screws." *Id.*

4. On June 1, 2024, Defendant Mitchell and Defendant David accessed Plaintiff's OnShape database, created an account "for Accuthread" using Defendant Mitchell's Accuthread email address, and began "electronically transferring ownership of" Plaintiff's designs and blueprints to Accuthread while Defendant Mitchell still worked for Plaintiff. *Id.* at PageID.11.

5. While working for Plaintiff, Defendant Mitchell "falsely stated to [Plaintiff's] customers that [Plaintiff] was going out of business" and should instead place orders with EJM and Accuthread. *Id.* at PageID.13. Similarly, Plaintiff alleges Defendant Mitchell "intentionally interrupted and shut down [Plaintiff's] telephone and internet service" to "Create the false appearance that [Plaintiff] was going out of business." *Id.*

6. Defendants stole "inventory and property" belonging to Plaintiff, including the equipment Plaintiff purchased from Defendant EJM in April 2019. *Id.* at PageID.15. Plaintiff alleges that some equipment was too large for Defendants to physically remote, so they "stole component parts to sabotage the Equipment and render it useless." *Id.*

7. Defendant Mitchell resigned from employment with Plaintiff on July 1, 2024. After resignation, he "unlawfully accessed [Plaintiff's] computers and/or servers without authorization and began deleting hundreds of [Plaintiff's] files. *Id.* at PageID.11.

Plaintiff alleges that on July 24, 2024, "the Michigan State Police obtained a search warrant to reclaim the equipment and inventory that Defendants stole from [Plaintiff]." *Id.* at PageID.17. But when the MSP arrived at "Defendants' warehouse," Defendants told MSP officers that they

could not take possession of the equipment because the equipment was the "subject of a civil proceeding." *Id.* Later that same day, Plaintiff's President, Joseph Richello, was served with a copy of a complaint filed against him and Plaintiff by Defendant EJM in state court. *Id.*; *see also* ECF No. 6-1 at PageID.94.

Plaintiff alleges that EJM's state court filing "falsely verified and alleged" that Plaintiff did not pay for the equipment purchased from Defendant EJM in April 2019 as required by the PSA. ECF No. 1 at PageID.16. To that end, Defendant EJM seeks a state court order "requiring a Sherriff or court officer to seize the [equipment related to the April 2019 PSA] and deliver it to Defendant EJM or its designated agent." *Id.* at PageID.17.

On August 5, 2024, Plaintiff sued Defendants (1) Accuthread LLC, (2) Aermotive, LLC, (3) EJM Ball Screw, LLC, (4) Mitchel Machelski, (5) Michael Machelski, (6) Matthew Machelski, (7) David H. Hansen, and (8) Austin Hansen. ECF No. 1. Plaintiff alleges that, as a result of Defendants' collective actions, Plaintiff's production "is at a near standstill," such that Plaintiff is unable to fulfill the purchase orders of its remaining customers. *Id.* at PageID.16. Plaintiff's Complaint asserts the following ten claims:

| Count | Claim | Defendant(s) |
|---|---|---|
| I | Computer Fraud and Abuse Act; 18 U.S.C. § 1030(g) | Mitchell Machelski<br>David H. Hansen |
| II | § 43(a) of the Lanham Act, 15 U.S.C. § 1125 | All Defendants |
| III | Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*. | All Defendants |
| IV | Common Law Conversion; MICH. COMP. LAWS § 600.2919a | All Defendants |
| V | Tortious Interference with Business Relationships | All Defendants |
| VI | Breach of Duty of Loyalty | Mitchell Machelski<br>Michael Machelski<br>Matthew Machelski |
| VII | Aiding and Abetting Breach of Duty of Loyalty | Accuthread, LLC<br>Aermotive, LLC<br>EJM, LLC<br>David H. Hansen<br>Austin Hansen |
| VIII | Deceptive Methods and Practices; MICH. COMP. LAWS § 445.903 | All Defendants |

| IX | Civil Conspiracy | All Defendants |
| X | Request for Declaratory Relief | All Defendants |

*Id.* at PageID.18–30.

Summons were issued on August 6, 2024. ECF No. 4. Importantly, no proofs of service have been filed on the docket, and no attorneys have filed appearances on behalf of any Defendant. But Plaintiff does report that on July 29, 2024, it warned Defendants in a cease-and-desist letter that Plaintiff's next step would be litigation. *See* ECF No. 6 at PageID.58.

Three days after filing its Complaint, Plaintiff filed a motion seeking a preliminary injunction against all Defendants, ECF No. 6, and a motion seeking expedited resolution of the preliminary-injunction motion, ECF No. 7.

## II.

Preliminary injunctions have "been characterized as one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (internal quotation marks omitted). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002). Importantly, a "court may issue a preliminary injunction only on notice to the adverse party." FED. R. CIV. P. 65(a)(1).

"In determining whether to grant a motion for preliminary injunction, the district court must consider and balance the following four factors: (1) the moving party's likelihood of success on the merits; (2) the moving party's likelihood of suffering irreparable injury absent the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) the degree to which the injunction would serve the public interest." *Towerco 2013, LLC v. Berlin Twp. Bd. of Trustees*, No. 23-3768, 2024 WL 3665539, at *4 (6th Cir. Aug. 6, 2024) (citing

*United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

### III.

Importantly, Plaintiff requests a "preliminary injunction," and *not* a temporary restraining order. *See generally* ECF No. 6. And "it is well-established that 'a court may not issue a preliminary injunction without advance notice to the adverse party.'" *Jones v. Majeed*, No. 1:19-CV-316, 2019 WL 10888152, at *1 (W.D. Mich. May 17, 2019), *aff'd*, No. 1:19-CV-316, 2019 WL 10888153 (W.D. Mich. May 30, 2019) (quoting *Wheeler v. Talbot*, 770 F.3d 550, 552 (7th Cir. 2017); *see also Taylor v. Univ. of the Cumberlands*, No. 16-CV-109-GFVT, 2016 WL 9966028, at *1 (E.D. Ky. June 24, 2016) (holding the issuance of a preliminary injunction absent evidence that defendants had been served would be improper).

And it is unclear whether Defendants have notice of Plaintiff's Complaint and Motion for Preliminary Injunction. Although the final page of Plaintiff's Motion for Preliminary Injunction notes that "[n]otice of this filing *will be sent* . . . by mail to anyone unable to" receive notice through the Court's electronic filing system and lists the names and addresses of all defendants, ECF No. 6 at PageID.92 (emphasis added), it is unlikely any Defendant has received this purported mail service at this juncture. Indeed, as explained, Plaintiff has not filed any proof that any Defendant has been served, such that it is unclear if Defendants are even aware of this *case*, let alone Plaintiff's Motion for a Preliminary Injunction.

And even if this Court were to liberally construe Plaintiff's Motion for a Preliminary Injunction, ECF No. 6, as a motion for a temporary restraining order (TRO), Plaintiff has not satisfied the procedural requirements to allow this Court to reach the merits. Indeed, a court may issue a temporary restraining order without informing the other party *only if* the movant provides a detailed affidavit or verified complaint that clearly demonstrates the need for immediate action

to avoid irreparable harm. FED. R. CIV. P. 65(b)(1)(A). Additionally, the movant's attorney must explain in writing the efforts made to notify the other party and the reasons why such notice is not necessary. FED. R. CIV. P. 65(b)(1)(B). Neither procedural requirement is met here. Plaintiff has not articulated *why* it would be unnecessary to notify Defendants about the requested injunctive relief, nor has Plaintiff shown "specific facts" which "clearly show that immediate and irreparable injury, loss, or damage *will result* . . . before the adverse party can be heard." FED. R. CIV. P. 65(b)(1)(A) (emphasis added); *see also Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705, 710 (E.D. Mich. 2006) ("A temporary restraining order is an extraordinary remedy that generally is reserved for emergent situations in which a party may suffer irreparable harm during the time required to give notice to the opposite party or where notice itself may precipitate the harm."). Thus, even construed as a motion for a temporary restraining order, Plaintiff's request would still be denied at this juncture.

## IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion for a Preliminary Injunction, ECF No. 6, is **DENIED WITHOUT PREJUDICE**.

Further, it is **ORDERED** that Plaintiff's Motion for Expedited Resolution, ECF No. 7, is **DENIED WITHOUT PREJUDICE**.

**This is not a final order and does not close the above-captioned case**.

Dated: August 9, 2024　　　　　　　　　　　　　　s/Thomas L. Ludington
　　　　　　　　　　　　　　　　　　　　　　　　THOMAS L. LUDINGTON
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge